DENOMINATIONAL ENVELOPE CO. et al.
v. DUPLEX ENVELOPE CO., Inc.
No. 3844.

Circuit Court of Appeals, Fourth Circuit.
Nov. 12, 1935.

See also (C.C.A.) 80 F.(2d) 179.

G. Mallet Prevost, of Washington, D. C. (R. E. Cabell and Geo. Lewis Chumbley, both of Richmond, Va., and Prevost & Prevost, George A. Prevost, and Arthur P. Cyr, all of Washington, D. C., on the brief), for appellants.

Theodore S. Kenyon, of New York City (Williams, Mullen & Hazelgrove, of Richmond, Va., and Kenyon & Kenyon and Lewis O. Hutchinson, all of New York City, on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

The Jones and Nielson patent, No. 1,403,250, of January 10, 1922, covering a mechanism for feeding articles of paper or envelopes to a rotary printing press of standard construction is the subject-matter of this suit. It was issued to Duplex Envelope Company, assignee of the inventors, by which suit was instituted in the District Court against Denominational Envelope Company, Union Envelope Company, Wesley P. Shomaker, Stevens Hughes, Donald E. Rheutan, Richard D. Rheutan, and Isaac Rheutan, charging infringement of the patent and praying for an accounting and payment of profits and damages, and for an injunction from further infringement. The defendants attacked the validity of the patent, denied infringement and set up other defenses which will be hereafter noted. The case was referred to a special master, who, in an able and painstaking report, sustained the validity of the claims of the patent sued on, and found infringement by the Denominational Envelope Company, the Union Envelope Company, Donald E. Rheutan, and Wesley P. Shomaker. The District Judge approved the report of the special master in all respects and signed an interlocutory decree referring the case again to the special master to determine the amount of profits and losses; from which decree, this appeal was taken.

The nature of the invention and its application to the facts of this case become clear when the events are outlined which led to the discovery. The Duplex Envelope Company, for nearly twenty years before the patent was issued, had been engaged in printing church subscription envelopes; and for five years, had been using presses developed by the Harris Press Company which were equipped with mechanical feed devices shown by the earlier patents No. 577,405 of 1897 and No. 661,245 of 1900 to Harris and McNutt. These devices it was the purpose of the patentees in suit to improve. In the operation of the Harris press, the envelopes were piled flaps down in hoppers in front of the feed rolls. A reciprocating feeder with projecting blades approached the stack of envelopes, so that the blades engaged the flap of the lowest envelope and pushed it forward until it was engaged by the feed rolls. The device was practicable but not without defects. The blades were apt to puncture the paper when operated at high speeds. If the envelope was warped, the blades sometimes failed to engage the flaps. Only 250 envelopes could be placed in a pile, for excess pressure interfered with the removal of the envelopes from the stack. Hence the constant attendance of a feeding operator was required. Another disadvantage was that it could be utilized only when the printing was to be done on the back of the envelopes, and if printing on the flap was also desired, the substitution of a different device was necessary, and the change from one to the other was consumptive of time and uneconomical. Still another defect was the wastage of stock resulting from the continued operation of the feed mechanism so long as the press cylinders continued to revolve through their own momentum after the impression cylinder was separated from the printing cylinder and the motive power was shut off. Three to ten revolutions would then ensue, during which the envelopes fed to the press were wasted; and this occurred the more frequently because the machinery was automatically stopped whenever the blades failed to function properly, as above described.

These disadvantages were overcome through the development of the device covered by the patent in suit. The work was done by Archer G. Jones, founder of the plaintiff company, and Albert W. Nielson, who came to Richmond in 1917 to become its plant superintendent, leaving his former employment with the Harris Press Company for this purpose. The improvements which they made upon the Harris press are described in the patent in suit substantially as follows: There are three closely related parts of the feeding mechanism: (1) The suction feed means; (2) the valve mechanism whereby suction is applied to and released from the feed block; and (3) the means whereby feeding is stopped upon the operation of a throw-off mechanism. The suction feed means consist of a so-called sucker block through which extend a number of suction tubes. The block is carried on an arm which through a lug and a forked link is supported by an operating shaft that is constantly rotated in synchronism with the impression cylinder of the press. Upon this shaft is mounted an eccentric cam containing a groove in which rides a cam roller that is attached to the forked link. The cam rotates with the shaft, and the cam roller, being forced around the groove, causes the sucker block to be raised into contact with the stack of envelopes and lowered to deposit the envelope drawn by suction from the bottom of the stack upon the feed table. The suction is then released and the envelope is pushed forward by reciprocating fingers to the feed rolls.

The valve mechanism or the second of the elements referred to is the heart of the patent. It controls the application and release of the suction as the envelope is successively withdrawn from the stack and deposited on the feed table. The valve consists in part of two fixed stationary members mounted on the shaft that actuates the movement of the sucker block. Between these members is a disc which is keyed to the operating shaft and rotates therewith. The stationary members are provided with ports extending entirely through them; and the rotating disc is likewise provided with a port which during the operation is ordinarily brought into and out of registry with the fixed ports. On one side the valve is connected with the sucker block, and on the other, to the vacuum pump, so that when the three ports are in registry, the suction is effective, but when the solid surfaces of the disc are interposed, the suction is cut off. The vacuum in the sucker block, however, is not entirely broken, for at the moment there is no release to atmosphere. This release is provided by a recess in the disc which extends partially through the disc and leads by a vent to atmosphere. The recess comes into registry with the port that leads to the sucker block at the moment when the block reaches its lowest point at the feed table, so that the vacuum is then released and the envelope deposited.

The third element of the invention operates to discontinue the feeding process when the power is shut off from the press through a throw-off mechanism. This device consists of another disc also mounted upon the operating shaft and located between the rotating disc and the stationary member which connects with the vacuum pump. This second disc does not rotate with the shaft, but being loosely mounted, is partially movable thereon in a rotary manner. This disc is also provided with a port which, through the tension of a spring, is normally maintained in registry with the fixed ports of the stationary members; but when the throw-off mechanism becomes operative, the disc in question, through a chain of mechanism, is slightly rotated, and its port is carried out of registry with the fixed ports so that the suction is immediately cut off and the feeding of the envelopes is stopped.

It is convenient at this point to refer to the incorporation of the Denominational Envelope Company, the leading defendant in the District Court, and to describe the machine which is charged to have infringed the patent. The company was organized in Richmond in 1927 to go into the same business as the plaintiff company by Donald E. Rheutan and Stevens Hughes, who had just left its employ for that purpose. Donald E. Rheutan became the president, Richard D. Rheutan, a brother, treasurer, and Stevens Hughes, the secretary. Isaac Rheutan, the father of Donald and Richard, later became the owner of the majority of the stock. The company bought Harris presses similar to those used by the plaintiff, and then employed Albert W. Nielson, coinventor of the patent in suit, to install suction feed devices in order to make them comparable with those used by the plaintiff. Nielson, who had been the chief mechanic of the plaintiff company, left its employ in the fall of 1926 and was employed by the defendant shortly after its incorporation. A press in the

plant of the Union Envelope Company, of which Isaac Rheutan was secretary and treasurer, was similarly equipped. Shomaker was employed by the plaintiff company to take the place of Nielson and remained with it between 1925 and 1931 when he also went with the defendant company. He did the work of equipping the defendants' machines with the devices covered by the two patents discussed in the opinion in a companion suit No. 3851 filed this day [Duplex Envelope Co. v. Denominational Envelope Co. et al. (C.C.A.) 80 F.(2d) 179].

With respect to the construction and operation of the sucker block used in the defendants' machines, substantial identity with the sucker block disclosed in the patent is not denied. The same thing may be said in regard to the cut-off mechanism in the two structures. The real contest centers upon the construction, location, and mode of operation of the defendants' valve mechanism, the valve disclosed by the patent in suit being in fact the gist of the invention. In the defendants' structure, the valve consists of two fixed plates bolted together and provided with ports extended entirely through them. One of these plates is a triangular casting bolted at its apex to the frame of the press. Through this casting and to the left of the valve assembly passes the operating shaft. Keyed on this shaft is a cam in which is cut an interior groove in which rides a cam roller. This roller is rigidly attached on the smaller end of an arm or lever shaped somewhat like a dog bone which constitutes the movable member of the valve assembly. The larger or expanded portion of the movable member operates between the two stationary members. It contains a port and also a recess vented to atmosphere. The timing of the valve in relation to the sucker block is similar to that described in connection with the plaintiff's valve. As the operating shaft revolves, the cam revolving with it forces the cam roller around the groove and the roller, carrying with it the attached movable arm, raises and lowers it. This movement brings the port in the movable member into registry with the fixed ports of the stationary members, when the suction block comes into contact with the stack of envelopes; it cuts off the suction but maintains a vacuum during the descent of the block, and finally releases the suction at the feed table when the recess in the movable member registers with the fixed port in the stationary member on one side. The valve assembly also includes a cut-off plate which is interposed between the movable member and the fixed plate on one side, and this cut-off plate, upon the operation of the press throw-off, is drawn laterally to the right to close the port and interrupt suction.

It will be seen from these descriptions that in both structures the operation of the valve is controlled by the shaft which operates the suction block; also that there are two fixed plates carrying fixed ports and an intermediate movable member adapted to establish and release suction in a timed relation with the movement of the suction block. The device for releasing the suction is identical, and the suction cut-off device in the defendant's structure is a full equivalent of the same element in the plaintiff's machine. The differences are found in the location of the valve assembly and particularly of the movable member thereof and in the character of its movement.

The function of both devices is identical; and the close association in both between the operating shaft and the valve controlling the suction block makes possible in both the high speed of operation and the elimination of defects which were achieved for the first time by the invention disclosed in the patent in suit. The evidence shows that when this mechanism is added to the Harris press, it permits the press to be speeded up 20 per cent. printing 24,600 envelopes per hour instead of a maximum of 21,000 per hour; and the evidence fully sustains the following summary of the benefits flowing from the invention made by the special master in his report: "It is not disputed that the Jones and Nielson suction feed renders possible a more rapid operation with fewer operatives; that the feed in operation is accurate, and certain, and in complete synchronism with the press; that it renders possible printing on either side of the envelope with the use of the same feed mechanism, and that feeding is stopped contemporaneously with the operation of the throw-off. That they were useful and practical improvements is demonstrated by their adoption, in modified form, by defendants."

The purpose and intent of the founders of the Denominational Envelope Company, as shown by the evidence, is likewise indisputable. It is manifest that they were fully acquainted with the successful

application and use of the invention in the plaintiff's plant, and desired to avail themselves of the same advantages in competition with the owner of the patent without recognition of its monopoly; and for this purpose, the new company was not only directed and managed by former employees of the plaintiff, but Nielson, one of the inventors, was employed to devise a mechanism which would accomplish the same result without infringement. The pivotal question in the case is whether his efforts were successful.

The claims of the patent in suit upon which the plaintiff relies are as follows:

"7. In a mechanism of the class described, the combination with a movable member for successively withdrawing articles from a stack, and a rotating shaft for operating said member, of valve means mounted on said shaft for controlling a suction in said member."

"8. In a mechanism of the class described, the combination with a movable member for successively withdrawing articles from a stack, and a rotating shaft for operating said member, of a valve comprising relatively movable members mounted on said shaft for controlling a suction in the withdrawing member."

"9. In a mechanism of the class described, the combination with a movable member for successively withdrawing articles from a stack, and a rotating shaft for operating said member, of a valve comprising relatively movable members mounted on said shaft, the said valve members being provided with registering ports for procuring a suction in said withdrawing member in advance of each withdrawal and for procuring the release of said suction in advance of each delivery."

"10. In a machine of the class described, the combination with article feeding means, a rotating shaft for operating said feeding means, and a throw-off mechanism for disconnecting said machine from the driving power, of valve means mounted on said shaft and operated by the rotation thereof for controlling a suction in said feeding means, and means coacting with said valve means for immediately shutting off the suction from said article feeding means upon the operation of said throw-off mechanism."

"11. In a machine of the class described, the combination with article feeding means, a rotating shaft for operating said feed-ing means, and a throw-off mechanism for disconnecting said machine from the driving power, of a valve mounted on said shaft and operated by the rotation thereof for controlling a suction in said feeding means, and means for shutting off the valve from the suction upon the operation of said throw-off mechanism to prevent further operation of said article feeding means upon continued rotation of said shaft."

The defendants point out correctly that the controversy centers around the valve mechanism. The suction feed mechanism, the first element of the plaintiff's device above described, was not new. It was shown in a number of prior patents including those upon which the defendants chiefly rely, the patent to Johnson No. 810,152 of 1904, and the patent to Huckins No. 1,118,-009 of 1914 hereinafter discussed. Moreover, the Harris press itself was equipped with a throw-off mechanism whereby the printing and impression cylinders of the press were separated and the motive power was disconnected, in case an envelope was not presented to the feed rolls. The claim to invention rests in the combination of these elements through the valve mechanism which controls the suction to the feed device during the printing operation, and which corelates the suction feed with the throw-off mechanism so as to interrupt the feed when the printing is stopped.

It is contended, first, in defense of the suit that the claims of the patent in suit are invalid because they are all based on combinations which are old in either the Johnson or Huckins patent, and if any novelty exists in the disclosure, it resides in the specific construction of the valve mounted on the shaft that controls the suction block. Hence it is said that even if this form of valve were itself patentable, an old combination including the valve was not patentable just as in McGrath Holding Corp. v. Anzell (C.C.A.) 58 F.(2d) 205, it was held that a new form of clamp did not justify the inventor in claiming an old combination consisting of an automobile rear view mirror, the hinge of an automobile door and a clamp for attaching the mirror to the hinge, since the parts coacted in the same way as the corresponding parts of old combinations and the sole novelty was in the form of the clamp. See, also, Langan v. Warren Axe & Tool Co. (C.C.A.) 184 F. 720.

The Johnson patent disclosed a metal sheet feeding mechanism consisting of a rocker arm carrying a suction block connected with a flexible suction tube and adapted to be reciprocated to and from a stack of blanks by means of a rod connected at one end to the rocker arm of the feed device and at the other end to a cam disc rotatably mounted on the drive shaft. The suction line was equipped with a valve member which was operably connected with the cam disc through the medium of another rocker arm, and was thereby opened and shut in timed relation with the reciprocation of the sucker block.

It is said that this patent shows the combination called for by claims 7, 8, and 9 of the patent in suit, that is, a movable member for successively drawing articles from the stack, a rotating shaft for operating that member and valve means for controlling the suction in that member. It is noticeable, however, that in the Johnson patent the valve is quite remote from the operating shaft. It is not mounted thereon or closely associated therewith, as in the case of the patent in suit and of the machines maintained by the parties to this suit. The cam of the Johnson patent is open and the rocker arm connecting with the valve would be incapable of operation at the high speeds which the envelope printing machines attain. Hence it is clear that the patented device differs from the Johnson patent, not only in the specific construction of the valve, but also in the fact that the valve in the patent corelates the feeding mechanism with the shaft in such a manner as to affect the nature of the whole operation. The result is not merely the substitution of one kind of valve for another, but the linking together of the feed means on the shaft in a combination more intimate and efficient.

It is well established that patentability may reside in a combination of old elements to produce new results, and a fortiori, this may be true when one of the elements in the combination is itself new and patentable. The new element may be patented alone. and the combination may also be patented, especially when a new part of a machine is invented which has no utility or functional importance except as a part of the whole. Bassick Mfg. Co. v. Adams Grease Gun Co. (C.C.A.) 52 F.(2d) 36; Doughnut Mach. Corp. v. Joe-Lowe Corp. (C.C.A.) 67 F.(2d) 135.

The Huckins patent covers an envelope blank printing and embossing machine which incorporates suction in the feeding device and also a device for arresting the operation of the feeding mechanism in the event of the nondelivery of a blank thereto. There is also a valve for controlling the suction in the feeding member. The feeding means comprise mechanical grippers which seize the. edge of the sheet when the suction nozzles suck it away from the sheets stacked behind it; while in the patent in suit, the blank is bodily removed from the stack by suction and deposited on the feed table, whence it is pushed by reciprocating fingers to the feed rolls.

Huckins does not have a valve mounted on the shaft which operates the suction feed. It has a valve plug interposed in the suction line to the nozzles, and this plug is mounted on a rocking shaft which is operably connected with an open cam mounted on the operating shaft near one end. At the opposite end of the operating shaft is a second cam operably connected with a swinging arm that carries the suction nozzles to and from the stack of blanks. Thus upon the rotation of the operating shaft, the nozzles near one end of the shaft are caused to swing to and away from the stack of envelopes and with these swinging movements, the valve on the suction line near the other end of the shaft is synchronized. It is obvious, however, that the relation between the rotating shaft and the suction feed is not so intimate or close as that which characterizes the valve mounted on the shaft in the patent in suit. The rotating shaft does not move the nozzles.

Nothing is said in the patent about release to atmosphere. The valve plug alternately opens and closes the suction lines of the nozzles without ever releasing the line to the atmosphere, as is required in the patent in suit. There are only two valve ports in the Huckins construction, one leading to the pump and the other to the nozzles, so that the means for procuring a release of suction called for by claim 9 of the patent is wholly lacking.

The Huckins structure, however, is equipped with a train of mechanism through which the power is cut off and the impression and type cylinders are separated when a sheet fails to be fed to the printing rolls. This cut-off is operably connected with the valve by a latch mechanism.

When the throw-off mechanism is operated, the arm connected therewith is drawn forward imparting a yielding pressure to a latch which engages a pin on the arm of the valve plug and holds the valve closed when it reaches a closed position. Thus the suction is cut off by stopping the motion of the valve until the feeding difficulty is corrected. This arrangement is not like the cut-off plate of the patent in suit which cuts off the suction without interference with the valve movements.

The defendants also point out that the only claims of the patent which specify a movable member for successively drawing articles from a stack, are claims 7, 8, and 9, and that this construction is shown by the Johnson patent with the exception that the valve in that patent is not mounted on the shaft. The Johnson suction block completely removed the articles from the stack.

Thus it appears that, broadly speaking, the Huckins patent includes a suction nozzle, a suction valve controlled by the same shaft which controls the nozzle, a throw-off mechanism operable when the feed mechanism fails, and a suction cut-off operable when the throw-off occurs, and that these same elements are found in the patent in suit. But it is clear from the aforegoing description that the elements in the latter structure, particularly the valve itself, differ in construction and mode of operation from the elements in the former. Hence claims 10 and 11 of the patent are not invalidated merely as containing old combinations, unaccompanied by new results, for as pointed out above in the discussion of claims 7, 8, and 9, with reference to the Johnson patent, we have here not merely the substitution of a new element in an old combination performing precisely the same functions as the corresponding element in the old combination, but a substitution of an element which changes the nature of the operation and actually accomplishes a new result.

The defense of noninfringement is based on the differences between the structure of the defendants and that shown in the patent in suit with respect to the location of the valve and the character of its movement; and it is said that, notwithstanding the similarity of the devices in all other respects, and the identity of results, infringement is avoided because the disclosures of the prior art, to which reference has been made, and the file history of the patent in the Patent Office

required that it be given a very strict construction. The application, which was filed in the Patent Office on December 16, 1918, contained fifteen claims, all of which were rejected on the Johnson and other prior patents. None of the claims stated that the valve was mounted on the shaft. On October 11, 1919, the application was amended and claims numbered 9, 10, and 11 (now claims 7, 8, and 9) therein were allowed, and the others rejected. One of the rejected claims in this amendment described the means for creating suction as rotary means, but this limitation thereafter disappeared from the application. The allowed claims, 9 to 11 (now 7 to 9), however, included the limitation that the valve was mounted on the shaft and the same limitation also appeared in claims 12 and 13 (now 10 and 11) of the patent which were allowed after later amendments. Accompanying the claims submitted on October 11, 1919, was a statement of the applicants' solicitor to the effect that the claims had been redrawn in view of the references and were then specific to rotary valve means for controlling the suction, said means being mounted on the operating shaft.

By reason of this file history, the defendants contend, as we understand their argument, that the plaintiff is estopped to claim that its patent covers any device other than one which includes the specific construction of a rotary valve mounted on a shaft. Since each claim stated that the valve is mounted on the shaft, it is obvious that this limitation is binding; nor is there any contention to the contrary. But the claim in suit does not limit the construction to a rotary valve, and the statement of the solicitor in the course of the Patent Office proceeding to this effect may not be carried into the claims allowed. It seems likely that he had reference to claims subsequently rejected, which contained this limitation. Whether or not this was his meaning, it is the language of the claim, and not the argument of patent counsel which controls. Of course the claim as allowed must be read and interpreted with reference to the rejected claims, and to the prior state of the art, and cannot be construed to cover what was rejected by the Patent Office or disclosed by prior devices. Doughnut Machine Corporation v. Joe-Lowe Corp. (C.C.A.) 67 F.(2d) 135. On the other hand, the solicitors' arguments of themselves set up no estoppel.

"We read the claims as they are written, like the language of any other formal statement drawn up as the final memorial of the parties' intentions, and we decline to consider what was said arguendo during the passage of the case through the Patent Office, or any other of the preliminary negotiations which the patent itself was intended to subsume." Auto Pneumatic Action Co. v. Kindler & Collins (C.C.A.) 247 F. 323, 328; R. Hoe & Co. v. Goss Printing Press Co. (C.C.A.) 30 F.(2d) 271; Byers Mach. Co. v. Keystone Driller Co. (C.C.A.) 44 F.(2d) 283; Fullerton Walnut Growers' Ass'n v. Anderson-Barngrover Mfg. Co. (C.C.A.) 166 F. 443.

██ It is therefore of no moment that the defendants' valve is not a rotary valve, but it is of importance to examine the contention earnestly pressed by the defendants that their valve is not "mounted on the shaft" in the correct sense of that term, and that it is not the equivalent of the structure described in the claims when they are narrowly construed in the light of the prior art. It is contended that the defendants' structure is shown by the prior art, and is therefore outside the range of equivalents to which the patent is entitled. Thus it is pointed out that in both the Johnson and Huckins patent, the valve is not mounted on the shaft, but is operatively connected with the shaft through a cam, and thereby oscillated by the shaft, and it is said that the same feature is found in the defendants' valve, distinguishing it from the Jones and Nielson valve mounted on the shaft.

The definition of the expression "mounted on" which is relied upon, is that which was given in the case of In re Duncan Pritchard & Macaulay, 28 App.D.C. 457, wherein it was said that a thing mounted upon another must be borne or supported by it, and that the mere riding in or over another in a slot, although operating in connection therewith, is not equivalent to being mounted thereon. See, also, Keystone Driller Co. v. Northwest Eng. Co., 294 U.S. 42, 55 S.Ct. 262, 79 L.Ed. 747, wherein the holding of the Sixth Circuit in Northwest Eng. Corp. v. Keystone Driller Co. (C.C.A.) 70 F.(2d) 13, was approved.

In considering this argument, and in comparing the structures of the parties to the case, the master said:

"In each case the valve assembly as a whole is compactly arranged around the feed control shaft and inseparable from it. There can be no movement of the stationary members or suction ports toward or away from the shaft; the valve and shaft are so bound together and combined that the valve must function in absolute synchronism with the rotation of the shaft.

"The specific differences in the forms of the two valves lie in the fact that in one the movable member is keyed to and rotates with the shaft, while in the other the movable member is attached to the shaft, through cam, groove and roller and oscillated by the rotation thereof. The registry of ports in the first instance is accomplished by a complete revolution, in the latter by a reciprocal motion. The combination of elements is substantially the same and accomplishes identical results by substantially equivalent means."

We are in agreement with this conclusion, for we do not think that infringement in this case necessarily depends upon whether or not the defendants' valve is mounted on the shaft in the sense that it is borne or supported by it. Indeed it is perhaps more accurate to say that the shaft is supported by the valve, for the shaft penetrates and rests upon the extension of one of the stationary members of the valve, which is bolted to the frame of the press. But the result is that there is established between the shaft and the valve a correlation far more close than is found in either the Johnson or Huckins patent. This is the important feature which gave virtue to the patent in the suit and led the defendants to imitate it by a device at least the full equivalent of the plaintiff's structure. The charge of infringement is made out, for even a narrow patent is entitled to some range of equivalents. Sanitary Refrigerator Co. v. Winters, 280 U. S. 30, 50 S.Ct. 9, 74 L.Ed. 147.

██ The defendants also insist that the suit should be dismissed as to all of them because the plaintiff has been guilty of laches in pressing its claim so great that it would be inequitable to permit the further prosecution of the case. This defense is based upon the circumstances that before the institution of the pending suit, a similar case was instituted in the same court on December 8, 1927, against all of the defendants in the present case except Wesley P. Shomaker, who has been substituted for Albert W. Nielson, a party to the prior suit. A preliminary injunction was denied in the former suit, and although

certain interrogatories were answered and certain drawings furnished by the defendants, the case was not pressed and was finally dropped from the docket on December 17, 1930. The answer in the pending suit also calls attention to the fact that in the meanwhile, Nielson, one of the joint inventors of plaintiff's patent, has left the jurisdiction and is not now available as a witness. There is no testimony bearing upon this defense other than a stipulation as to the institution and dismissal of the prior suit, and a statement that Nielson is no longer in Richmond. Under these circumstances, we are in accord with the conclusion of the District Court that the defense of laches is not made out. The length of time during which a party may rest upon his rights, without being guilty of laches, varies with the circumstances of each case, and in order to constitute the defense, the lapse of time must be so great and the relations of the defendants to the rights claimed must be such that it would be inequitable to permit the plaintiff to assert them. Halstead v. Grinnan, 152 U.S. 412, 416, 14 S.Ct. 641, 38 L.Ed. 495. There is no evidence from which we may conclude that the defendants could not have secured Nielson as a witness if they had wished to do so, or that they have been prejudiced by the prosecution of the suit at this time.

A motion was made in the District Court to dismiss the case as to the individual defendants, and it was granted as to Isaac L. Rheutan, Richard D. Rheutan, and Stevens Hughes, from which action no appeal was taken by the plaintiff. The defendants claim it should also have been granted as to Donald E. Rheutan and Wesley P. Shomaker on the ground that they were acting merely as agents of the Denominational Envelope Company and not as independent individuals. Donald E. Rheutan, as we have seen, took an active part in the organization of the Denominational Envelope Company and has been its president and the active manager of its affairs. He engaged Nielson to install the infringing structures upon the corporation's machines. In April or May, 1931, he also engaged the defendant Shomaker, an expert mechanic formerly in charge of the machine shop of the plaintiff, to construct the caterpillar machines which are involved in the companion case No. 3851 [Duplex Envelope Co. v. Denominational Envelope Co. et al. (C.C.A.)

80 F.(2d) 179]. It is obvious that both Donald E. Rheutan and Shomaker were active in the affairs of the latter company and thoroughly conversant with the character of its operations, and of the acts which have been held herein to constitute deliberate infringement of the patent in suit. Under these circumstances, the decision of the master to hold not only the corporation but the individual parties named was justified by the decided cases. See Greene v. Buckley (C.C.) 120 F. 955; Panzl v. Battle Island Paper & Pulp Co. (D.C.) 132 F. 607; Hitchcock v. American Plate Glass Co. (C.C.A.) 259 F. 948; Ruggles-Coles Eng. Co. v. McGann Eng. Co. (D.C.) 34 F.(2d) 519, affirmed (C.C.A.) 41 F.(2d) 1005.

The decree of the District Court is affirmed.