HARTFORD–EMPIRE CO. v. SWINDELL
BROS., Inc. (AMSLER–MORTON
CO., Intervener).

No. 4273.

Circuit Court of Appeals, Fourth Circuit.
April 21, 1938.

228

Sidney F. Parham, of Hartford, Conn., and Edwin F. Samuels, of Baltimore, Md. (William J. Belknap, of Detroit, Mich., and Robson D. Brown and Lloyd G. Bates, both of Hartford, Conn., on the brief), for appellant.

William B. Jaspert, of Pittsburgh, Pa., and Lawrence C. Kingsland, of St. Louis, Mo. (Cook & Markell, of Baltimore, Md., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal in a patent infringement suit involving Mulholland reissue patent, No. 17,263, Ingle patent, No. 1,583,046, and Mulholland patent, No. 1,840,463, all relating to lehrs for the annealing of glassware. The judge below held that, as the patents related to improvements in a crowded art, they should be narrowly construed and that, when so construed, they were not infringed by the lehr of defendants. See Hartford-Empire Co. v. Swindell Bros., D. C., 18 F.Supp. 191.

Annealing is a process of controlled heating and cooling of newly made glassware to eliminate or minimize strains in the ware which would otherwise develop. Many glass articles such as jars and bottles are made by pouring molten glass into iron molds and allowing it to harden. When removed from the molds the articles have an average temperature of from 1,200 to 1,300 degrees Fahrenheit. If they are permitted to cool under ordinary atmospheric conditions, the outside of each article will cool more rapidly than the inside, thus causing a contraction of the outer portion and creating a force which will effect a dimensional change in the inner portion. As the inner portion cools, it in turn will contract and will thus create a stress upon the outer portion which has already cooled and is not sufficiently plastic to permit a dimensional change. As a result, strains will be set up which will cause the article to break or will render it too weak to be of any value. The problem of annealing is to heat the glassware to such a temperature (approximately 1,000 degrees) as will render it plastic and permit the particles of which it is composed to readjust themselves, and then gradually and uniformly to cool it to ordinary atmospheric temperature.

Annealing under modern manufacturing conditions is accomplished by the use of heated tunnels, 70 feet or more in length, called lehrs, through which the newly formed glassware is passed on conveyors. These lehrs are heated at the entrance end to a temperature of between 1,000 and 1,100 degrees, and this temperature is maintained for about a third of the length of the tunnel. Through the next third, which is the critical stage of the annealing process, the temperature is gradually reduced to a little below 800 degrees. Through the remainder of the distance, the effort is to bring the ware gradually to normal atmospheric temperature. Prior to the development of the lehr of the reissue patent, the best lehrs that the art had been able to develop were large stationary brick structures, about 10 feet in width and 70 or more feet in length, to which it was necessary that the glassware be carried from the forming machines. These lehrs were heated at the receiving end by flues which completely encircled the tunnel, applying heat at the sides and top of the tunnel as well as at the bottom in such a way that it was practically impossible to secure a gradual reduction of the temperature between the hot entrance and the critical annealing stage. Longitudinal currents of air were necessarily set up by such a heating arrangement and these subjected the ware in the critical annealing stage to uneven temperatures which were frequently harmful. Narrow movable lehrs, called "unit" lehrs, formed of metal walls insulated with mineral wool, kieselguhr, or other nonheat-conducting material, had been devised on the principle of the fireless cooker, for the purpose of annealing by means of the heat which the ware contained when it entered

the lehr; but such lehrs proved of little practical value and did not enter into general use.

The original of the reissue patent in suit was applied for March 31, 1925. It covered both a lehr and a process of annealing glassware; but, as the process claims amount to no more than the process of properly operating the lehr of the patent, we may confine our consideration to it. The lehr embodies devices old in the art, but brought together for the first time in such a way as to produce a resultant which is more than the aggregate of their separate functions, i. e., a lehr in which the longitudinal air currents of the prior art are almost entirely eliminated and are replaced by vertical convection currents within the different annealing zones, resulting in greater uniformity of temperature at any given stage of the annealing process. This result has been accomplished by applying heat to the bottom of the heatless "unit" lehrs of the prior art by means of heating flues which serve as the bottom of the tunnel, with means for gradually decreasing the heat towards the discharge end of the tunnel by admitting air through dampers provided in the sides of the flues. Cooling flues are provided for the top of the tunnel, with the result that, since the bottom is hotter than the top, the currents of air created are vertical rather than horizontal. The gist of the invention is thus described in the specification of the patent:

"In carrying out the foregoing objects, I provide a lehr having a plurality of lower flues extending longitudinally beneath the tunnel and a plurality of upper flues extending longitudinally above the tunnel, all of said flues being provided with damper-controlled openings arranged at spaced intervals throughout their length and communicating with the outside atmosphere.

"Heated gases are passed through the lower flues from the receiving end of the lehr toward the delivery end thereof, and the temperature of the gases, and therefore the temperature of the floor of the tunnel throughout its length, is controlled at will by adjusting the dampers in these flues to dilute the gases with air at selected intervals.

"Cooling air is passed through the upper flues in a direction opposite to that of the flow of the heated gases, and the cooling effect of the air is also regulated to control the temperature of the top of the tunnel throughout its length by adjusting the dampers in these flues to permit more or less of the air to escape to the outside atmosphere at selected intervals.

"By properly adjusting the dampers in both the upper and lower flues, the temperatures at the bottom and at the top of the tunnel may be independently regulated so as to control the circulation of local heat-convection currents in the tunnel thereby rendering it possible to distribute the heat uniformly both vertically and transversely of the tunnel."

The claims of the patent relied on are 1, 2, 7, 8, 44, 45, 46, 48, 49, 50, 51, 52, and 53. Of those relating to the construction of the lehr, as distinguished from process claims, 22 and 52 are typical. They are as follows:

"A lehr for annealing glassware comprising a tunnel, a flue associated with said tunnel, means for causing a heating medium to flow through said flue, the said flue being divided into a plurality of independently controllable heating zones, and means, including spaced dampers, for increasing or decreasing, at will, the temperature in any of the said zones.

"A lehr for annealing glassware comprising a tunnel, a conveyor of low heat mass movable through said tunnel for transporting the ware therethrough, while permitting sensitive control of the transference of heat to and from the ware, a flue associated with said tunnel and adapted to conduct a heated medium therethrough, said flue having a plurality of contiguous controllable temperature controlling zones, means for causing a heated medium to flow through said flue, and means including spaced dampers for independently controlling at will the temperature drop in any of said zones, whereby the temperature of the ware may be accurately controlled by temperature of the medium in the flue, and whereby the ware is made quickly responsive to such control."

It will be noted that the last claim covers a certain type of conveyor, in addition to the heating means used for heating the tunnel, but, as this conveyor is covered by the Ingle patent, No. 1,583,046, we shall defer discussion of that feature of the structure until we take up the Ingle patent.

The result of the invention embodied in plaintiff's structure has been to revolutionize the art of annealing the type of glassware produced by the automatic forming machines. Loss from breakage has been reduced from 5 or 10 per cent. to less than 2,

per cent. Annealing time has been reduced from approximately 10 hours to an hour and a half. Fuel costs have been greatly reduced, one witness stating that the improved lehr takes care of three and one-half times as much ware as the old type at probably one-fifth of the fuel consumption. And a considerable saving of labor in transferring the ware from the forming machine to the lehr and in tending the lehr has been effected. In short, so manifest are the advantages of the new lehr of the reissue patent that use of the old brick lehr of the prior art has been almost completely abandoned. It is clear, we think, not only that the reissue patent is valid as to the claims in suit, but also that, whether regarded as a pioneer patent or not, it has effected such an advance in the art that it is entitled to liberal treatment and protection by a liberal application of the doctrine of equivalents. Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 63, 43 S.Ct. 322, 67 L.Ed. 523; Oates v. Camp, 4 Cir., 83 F.2d 111, 115; Denominational Envelope Co. v. Duplex Envelope Co., 4 Cir., 80 F.2d 186; Wine Ry. Appliance Co. v. B. & O. R. Co., 4 Cir., 78 F.2d 312, 317; Black & Decker Mfg. Co. v. Baltimore Truck Tire Service Corp., 4 Cir., 40 F.2d 910; Gulf Smokeless Coal Co. v. Sutton, Steele & Steele, 4 Cir., 35 F.2d 433; Frick Co. v. Lindsay, 4 Cir., 27 F.2d 59, 62.

The lehr of defendants embodies, as does the lehr of the patent, the "unit" lehr of the prior art, i. e., a light, narrow, movable structure with walls of sheet metal insulated with mineral wool or kieselguhr. It has also the same sort of woven wire conveyor with practically the same sort of drive, as we shall point out more fully in discussing the Ingle patent. It differs from the lehr of the reissue patent in the following particulars: It has no cooling flues at the top of the tunnel; the heating flue beneath the tunnel extends for only about two-thirds of the length of the tunnel or through the annealing range; a firebox is provided above the entrance of the tunnel; the return strand of the conveyor is within and not beneath the tunnel; and the temperature of the heating flue is controlled by drawing off the heated air through dampered flues instead of by admitting cold air from the outside through dampers into the flue. Notwithstanding these differences, however, it takes the whole gist of the invention of the patent, i. e., the use of a flue beneath the tunnel as a means of heating the tunnel with means for controlling the temperature with-

in the flue, so that, with the tunnel having a hotter bottom than top, vertical rather than horizontal air currents will be produced.

Defendants contend that heating flues beneath the ware tunnel of the lehr were common in the prior art; and it is true that prior art structures show flues beneath as well as to the side of and above the tunnel. The prior art does not show, however, a construction which would necessarily result in a hotter bottom than top for the tunnel or the vertical air currents which are of so much importance in the annealing process. On the contrary, it shows an effort to heat the entrance end of the tunnel at the sides and top as well as at the bottom in a way that necessarily results in longitudinal rather than vertical air currents. In plate glass annealing, flues beneath the tunnel were used for the purpose of heating the rollers on which the hot sheets of plate glass were rolled from annealing ovens to be cooled; but these flues were used for such an entirely different purpose in a branch of the art where the problems were of such a different character that they did not suggest to anyone the device of the reissue patent for the annealing of ordinary glassware.

■ As a matter of fact, the flue beneath the tunnel would not have been adequate for heating the lehr without a means of controlling the heat gradient of the flue. This the patentee accomplished by the dampered cold air inlets in the sides of the flues; and this combination of the heating flue beneath the tunnel with means of controlling the heat gradient thereof constituted the real invention of the patent. The accused structure seeks to avoid infringement by shortening the flue so that it will extend beneath the tunnel only so far as heat is needed, i. e., through the critical annealing zone, and to provide as a means of controlling the heat gradient through this zone dampered outlets for the heated air of the flue. This, however, not only reads on the claims of the patent but is a manifest substitution of an obvious equivalent for the means shown in the specification.

It is argued that dampered outlets for heated air are shown in the prior art; that the claims of the patent must be limited to the dampered inlets for cold air shown in the specification; and that, when so limited, they are not infringed by the accused structure. Dampered outlets were of course old in the prior art, as were dampered inlets; and no invention can be claimed as to either. As heretofore stated, however, the invention

consists in using as a means of heating the tunnel, the combination of the longitudinal heated flue with means for controlling the heat gradient therein; and in such a combination substituting one obvious and well-known method of controlling the heat gradient for another does not avoid infringement. Both accomplish the same thing, i. e., the control of the heat gradient of the ware tunnel, in substantially the same way, i. e., by reducing the heat of the heating flue. While in the one case there is the bringing in of cold air and in the other the letting out of hot air, both are methods of cooling well understood in the art; and, as substituting one for the other could not constitute invention, such substitution could not avoid infringement. As was said by Mr. Justice Curtis in Winans v. Denmead, 15 How. 330, 342, 14 L.Ed. 717:

"It is only ingenious diversities of form and proportion, presenting the appearance of something unlike the thing patented, which give rise to questions; and the property of inventors would be valueless, if it were enough for the defendant to say, your improvement consisted in a change of form; you describe and claim but one form; I have not taken that, and so have not infringed. The answer is, my improvement did not consist in a change of form, but in the new employment of principles or powers, in a new mode of operation, embodied in a form by means of which a new or better result is produced; it was this which constituted my invention; this you have copied, changing only the form."

■ And what we said in Frick Co. v. Lindsay, 4 Cir., 27 F.2d 59, 62, is applicable here. We said: "While the patent of complainant is not a basic or pioneer patent, this does not mean that it is not entitled to invoke the doctrine of equivalents. The range of equivalents, it is true, depends upon the extent and nature of the invention, and if the invention is broad and primary in character, the range of equivalents will be correspondingly broad; but, where the patent is for a mere improvement, a narrower range of equivalents will be applied. Paper Bag Patent Case, 210 U.S. 405, 415, 28 S.Ct. 748, 52 L.Ed. 1122. Any patent, however, has some range of equivalents, unless form is made the indispensable thing." See, also, Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 41, 50 S.Ct. 9, 12, 74 L.Ed. 147; Union Paper Bag Mach. Co. v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935; Oates v. Camp, 4 Cir., 83 F.2d 111, 115; Hoeltke v. C. M.

Kemp Mfg. Co., 4 Cir., 80 F.2d 912, 921; Wine Ry. Appliance Co. v. B. & O. R. Co., 4 Cir., 78 F.2d 312.

■■ And we do not think that infringement was avoided by placing a firebox above the entrance to the tunnel in the accused lehr. It appears that the lehr has been operated at times without heating this firebox and that when it is heated the heat is maintained at a temperature 300 degrees lower than the heat of the bottom flue. This means, of course, that the same result with respect to air currents is attained as in the lehr of the patent; for the air in contact with the bottom flue will be raised to a higher temperature than the other air in the tunnel, and this will cause it to rise and, as it rises, the cooler air above will fall to take its place. This will produce vertical air currents in the accused lehr just as in the lehr of the patent. The defendants, realizing the importance of this, contend that their tunnel is hotter at the top than at the bottom; and their expert witness did so testify at one point in his testimony. He later corrected this testimony, however; and the curve of temperature taken from the actual operation of one of the accused lehrs shows clearly that the temperature of the under side of the roof of the tunnel was lower than the temperature above the bottom heating flue for more than 20 feet of the tunnel, and was lower than the temperature of the ware-bearing conveyor throughout the entire critical annealing period. (See Plaintiff's Exhibit 46). It clearly appears, therefore, that the accused lehr operates on the same principle as that of the patent, notwithstanding changes introduced for the evident purpose of avoiding infringement, such as using tile instead of metal for the heating flue, placing a heating box above the entrance of the tunnel, and returning the conveyor within the tunnel instead of beneath it. The fact that these may have resulted in impairing the efficiency of the lehr does not avoid infringement. Walker on Patents, 6th Ed., vol. 1, p. 504. Infringement is not avoided either by impairment of function or by the addition of elements to the complete structure of the patent claims. Murray v. Detroit Wire Spring Co., 6 Cir., 206 F. 465, 468.

■ The Ingle patent, No. 1,583,046, relates to the woven wire conveyor of the lehr. It was applied for on March 31, 1925, at the same time as the original application for the patent covered by the reissue which we have just had under consideration; and

232

it appears that the two inventions were developed by employees of plaintiff at about the same time and were embodied in plaintiff's improved C type lehr. There was, of course, nothing new in a woven wire belt. It was covered by a patent to one Swinscoe in the year 1901. Moreover, in the Tondeur patent of 1884, which related to moving sheets of glass through a lehr, one of the claims called for "a bed made of flexible wires, wire ropes, or ribbon, or woven wire apron, on which the sheets of glass rest and are moved onward." Tondeur did not disclose, however, any method by which a woven wire belt could be used as a conveyor of a load of glassware such as is carried by conveyors in lehrs under modern annealing conditions; and, until the invention of Ingle, it was generally thought that such a conveyor would not be practical for the reason that it would be so weakened by the heat of the tunnel that it would not be able to support the load of glassware which it would be required to carry. Ingle solved the problem by passing the belt around a driving drum and relieving the strain upon the return strand by the use of another pulley, with the result that the only strain upon the heated portion of the belt was that exerted by the weight of the glassware on that portion. Defendants admit that plaintiff was the first to use the woven wire conveyor in connection with glass annealing lehrs and that "it is the basis of the tremendous fuel economy which has been realized." Plaintiff's Exhibit 39. It unquestionably advanced the art of annealing; and we think that the patent covering it should be sustained and accorded liberal treatment. The only claim here in suit is claim 5, which is as follows:

"A glass-annealing leer comprising a tunnel, an endless carrier, extending longitudinally therethrough, said carrier being of flexible woven wire construction and having symmetrical upper and lower surfaces, and a drum for driving said carrier arranged to have driving contact with the ware supporting surface of said carrier."

■ The defendants use the same sort of woven wire belt with the same sort of pinch drive to accomplish the same result in the same way as does plaintiff's conveyor, except that the return strand is carried within the tunnel instead of beneath it, that the ware-bearing strand does not slide on the tunnel and that the drum engages the reverse side of the belt instead of the ware-bearing side. The carrying of the return strand of the conveyor within the tunnel instead of beneath it results in a mere impairment of function, we think, without avoiding infringement; and the adjustment of the pinch drive so that the reverse side of the belt instead of the ware-bearing side engages the drum is nothing more than a reversal of parts embodying the same mechanical principles and it is well settled that this does not avoid infringement. Walker on Patents, 6th Ed., vol. 1, p. 497; Allen v. Wingerter, 3 Cir., 17 F.2d 745, 747. The Gilman drive for belts of grain conveyors, which is relied on, does not anticipate or limit the patent; for no novelty is claimed or could be claimed for the driving means. Likewise there is no novelty in the mere use of a woven wire belt; and a claim covering the use of such a belt as a conveyor in a glass annealing lehr was properly rejected in the patent office. It is the combination of the drive with the belt which produces the efficient conveyor of the patent. It is this combination which enables the plaintiff to successfully use the belt of woven wire as a conveyor and it is this combination which the defendants are imitating.

■ Mulholland patent, No. 1,840,463, covers a heatless lehr of the unit type with a conveyor consisting of a series of bicycle chains. We agree with the learned judge below that, when the claims of the patent are limited as they must be in the light of the prior art, they cannot be held to be infringed by the lehr of the defendants. Nothing need be added to the discussion of this question contained in his opinion.

■ We find no merit in the defense of laches with respect to the assertion of the claim of plaintiff either against the defendants, Swindell Bros., or against the intervener, the Amsler Morton Company, which has assumed the defense of the suit. There is no evidence that the delay in instituting suit has resulted in injury or prejudice to either of these parties, or that there has been any such change of circumstances as the result of such delay as would render it inequitable for plaintiff to be granted protection by injunction at this time with damages for past infringement. On the contrary, it appears that the Mulholland reissue patent was not granted until 1929 and that lehrs of the type purchased by Swindell were first made by the Amsler Morton Company in that year. On June 7, 1929 plaintiff wrote that company that its lehrs constituted an infringement of the patent. Swindell Bros. did not purchase their lehrs

from Amsler Morton Company until 1931 after they had been notified by plaintiff of the infringement and had secured from Amsler Morton Company a guaranty of protection against liability on that account.

The statute, since the amendment of March 3, 1897, § 6, 29 Stat. 694, limits the recovery of profits and damages to those arising from infringements committed within six years prior to the institution of suit, 35 U.S.C.A. § 70; and we know of no other period of limitations which can be invoked by an infringer to bar recovery. Where there are circumstances which render it inequitable for relief to be granted because of delay in instituting suit, relief may be denied on grounds of laches or estoppel; but no such circumstances are shown here. It is well settled that mere delay short of the statutory period of limitation is not sufficient of itself to bar relief. As was well said by the late Judge Walter H. Sanborn in Drum v. Turner, 8 Cir., 219 F. 188, 198: "It is no defense to a suit for an injunction and an accounting on account of the continuing trespasses of an infringer that the latter has been trespassing on the rights of the owner of the patent for years with impunity."

In the recent case of Denominational Envelope Co. v. Duplex Envelope Co., 4 Cir., 80 F.2d 186, 194, Judge Soper, speaking for this court, said: "The length of time during which a party may rest upon his rights, without being guilty of laches, varies with the circumstances of each case, and in order to ·constitute the defense, the lapse of time must be so great and the relations of the defendants to the rights claimed must be such that it would be inequitable to permit the plaintiff to assert them." See, also, McLean v. Fleming, 96 U.S. 245, 24 L.Ed. 828; Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526; Halstead v. Grinnan, 152 U. S. 412, 416, 14 S.Ct. 641, 38 L.Ed. 495; Beattie Mfg. Co. v. Smith, 2 Cir., 275 F. 164, 172; Rajah Auto Supply Co. v. Belvidere Screw' & Machine Co., 7 Cir., 275 F. 761, 764; Frank F. Smith Hardware Co. v. S. H. Pomeroy Co., 2 Cir., 299 F. 544, 548; United Verde Copper Co. v. Peirce-Smith Converter Co., 3 Cir., 7 F.2d 13, 19; Starr Piano Co. v. Auto Pneumatic Action Co., 7 Cir., 12 F.2d 586, 588; and compare Union Shipbuilding Co. v. Boston Iron & Metal Co., 4 Cir., 93 F.2d 781, 783. And generally that "laches * * * is not mere delay, but delay which works a disadvantage to another," see Leonard v. Gage,

4 Cir., 94 F.2d 19, 25; Schmelz Liquidating Corp. v. Williams, 4 Cir., 86 F.2d 167, 169; 1 Pomeroy, Equitable Remedies, 21.

It follows that the decree appealed from will be affirmed in so far as it relates to Mulholland patent, No. 1,840,463, and reversed as to Mulholland reissue patent, No. 17,263, and Ingle patent, No. 1,583,046, and that the cause will be remanded for further proceedings in accordance with this opinion.

Affirmed in part; reversed in part and remanded.