SPECIALTY EQUIPMENT & MACHINERY
CORP. v. ZELL MOTOR CAR CO. et al.

No. 6307.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 7, 1951.

Decided Jan. 9, 1952.

Nelson Moore and William D. Hall, Washington D. C. (Richard S. Wright, Baltimore, Md., on brief), for appellant.

Harry W. Lindsey, Jr., Chicago, Ill. and Carlyle Barton, Jr., Baltimore, Md. (George N. Hibben, Chicago, Ill., on brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal in a patent case involving Fleischel Patent No. 2,203,296 and Reissue thereof No. 23,236 relating to automatic gear shift for automobiles. The judge below, without considering the prior art, held that the accused Packard device did not infringe the patent and entered judgment for the defendants. 96 F.Supp. 904. He taxed as costs against plaintiff $7,000 of disbursements by defendants for costs of models used in the presentation of its case. The appeal questions this order as well as the decree finding non-infringement.

The invention of the patent in suit consists in using servo-motors operated by oil under pressure to engage and disengage the clutch and shift the gears of an automobile. The pressure of the oil on the servo-motors is regulated by a valve which is so constructed that a force generated by a governor attached to the engine, and dependent upon the speed of the engine, presses upon the valve from one direction and is opposed by another force or forces pressing upon it from the opposite direction. When the speed of the engine has increased to the point that the force generated by the governor is sufficient to overcome the opposing force, the valve permits the oil pressure to operate the servo-motors in such way as to engage the clutch or shift the gears. When the speed is decreased, the gears are shifted to the lower ratios and the clutch is finally disengaged as the result of the force exerted on the valve by the governor becoming less than the opposing force. The patent is a combination patent and one feature of the combination is the use on the valve of two pistons in such way as to utilize the pressure of the oil in the operation of the valve. This achieves a "progressive" engagement of the clutch, which is of great importance in the starting of the car.

The principle of the patent is the application of force derived from the speed of the engine to control the operation of a valve, which will in turn regulate the application of oil pressure in such way as to cause the servo-motors to engage or disengage the clutch or shift the gears when a certain speed is attained. The claims particularly relied on by plaintiff are claims 6 and 27 which are as follows:

"6. In the combination of an engine, a mechanism operatively connected thereto, and means including a servo-motor to operate said mechanism, means to supply fluid to said servo-motor, and control means for said fluid including a casing, a valve slidable in said casing, a source of fluid under pressure, an inlet opening from said source into said casing, outlet openings from said casing, one of said outlet openings constituting a discharge, said openings being spaced along said casing in the direction of move-

ment of said valve, said valve having obturating portions adapted to close the two end openings or to uncover said openings selectively and having a part of less cross section connecting said obturating portions opposite the intermediate opening, one of said end openings being the discharge opening, said obturating portions having different effective areas so that pressure fluid within the space between said obturating portions tends to move said valve in one direction, and means to exert on said valve a force which varies with variations in the operating conditions of the engine.

"27. In the combination of an engine, a mechanism operatively connected thereto, and means including a servo-motor to operate said mechanism, means to supply fluid to said servo-motor, and control means for said fluid including a distributor, said distributor being so constructed and arranged that the fluid controlled thereby exerts a force on the distributor, and means to exert on said distributor an opposing force which varies with variations in the operating conditions of the engine and normally increases when the charge to the engine increases from meagre to full charge, said engine being an internal combustion engine having means which jointly varies the charge to the engine and influences the means that exerts said opposing force."

The ultramatic drive of Packard is claimed by plaintiff to infringe, because it is said that the device of the patent or its equivalent is used to engage the direct drive clutch and the high range clutch of the Packard ensemble. Packard does not use the ordinary friction clutch for starting nor for shifting gears. The car is started by the use of the "Torque Converter", a device which uses oil and the principle of the turbine to transmit the speed of the engine to the shaft which runs the car. This torque converter puts the car in motion when the engine attains a minimum speed and could be used as the sole means of power transmission. More economical operation results, however, in shifting to direct drive by means of a friction clutch when a good going speed has been attained by the car; and the Packard mechanism is

so arranged that it automatically shifts from the torque converter to direct drive by the friction clutch when a speed of 15 miles per hour is attained by the car, if there is an easing of the pressure on the throttle, and drops back to the torque converter if the speed is allowed to fall below 13 miles per hour. By not easing the pressure on the throttle the torque converter can be held in operation until a speed of 55 miles per hour is obtained, but at this point the direct drive goes in whether there is an easing of the throttle or not.

For shifting from the torque converter to the direct drive. Packard uses a servo-motor to engage the direct drive clutch and uses oil under pressure to operate the servo-motor. The pressure of the oil which controls the servo-motor is controlled by a valve with two pistons operated on at one end by the force of a governor attached to the shaft of the car and at the other by an opposing force generated by the throttle. When the force generated by the governor as the result of the increasing speed of the car is sufficient to overcome the opposing force, the valve shifts and affects the oil pressure in such way as to operate the servo-motor and thus engage the clutch. By means of a "modulating" valve, which works in conjunction with the valve controlling the servo-motor, the oil under pressure is used to affect the operation of the latter valve.

Plaintiff does not contend that there is an infringement of its patents by the use of the torque converter or in anything that Packard does in the starting of the car. It contends, however, that its patent is infringed by the mechanism used in engaging and disengaging the direct drive clutch and the high range clutch. It says that the valves used by Packard to control oil pressure and operate the servo-motor operating the clutch are the equivalent of the valve of the patent used for that purpose; that, where the starting of the car is not involved, a governor operated by the speed of the shaft is the equivalent of a governor operated by the speed of the engine; and that there is no difference in principle between using centrifugal force and the force

of a liquid under pressure as the force applied by the governor. A neutral expert, appointed by the court with the consent of the parties, agreed with these contentions of plaintiff. The trial judge did not agree but found that there was no infringement, basing this finding upon certain differences in operation referred to in his opinion without reference to the prior art.

■ We are not prepared to say upon the record before us, and without consideration of the prior art, whether the device of Packard does or does not infringe. Certainly infringement is not necessarily avoided because Packard does not use progressive engagement in starting the car, which is important only when starting is effected by a friction clutch, or because the governor is operated by a force generated by the drive shaft instead of by the engine, which of course operates the drive shaft, or because the governor uses the force of a compressed liquid instead of centrifugal force, or because the Packard device is "tailored" to the torque converter, or because the mechanism described in the drawings and specification of the patent would not operate on the Packard mechanism without substantial changes in detail not amounting to a change in principle. If infringement is avoided, it is because the claims of the patent are so limited and the range of equivalents is so narrowed by the prior art that what Packard does is not reasonably covered by the invention which it was the purpose of the patent to protect. While it is true that the function of a machine is not patentable and that there is infringement only where the same result is reached by substantially the same or similar means, Westinghouse v. Boydon Power Brake Co., 170 U.S. 537, 569, 18 S.Ct. 707, 42 L.Ed. 1136, it is also true that one using the substance and essentials of a patented combination does not avoid infringement by varying nonessential details. Neither the joinder of different elements of a patented combination into one, nor the separation of one integral part into two or more doing together substantially what was done by the single element will evade a charge of infringement. Nathan v. Howard, 6 Cir., 143 F. 889. Nor is infringement avoided by the substitution for parts of a patented device other devices which are known equivalents in the prior art; and this is true even though the patent be a combination patent. As said by Mr. Justice Clifford in Imhaeuser v. Buerk, 101 U.S. 647, 656, 25 L.Ed. 945: "Patentees of an invention consisting merely of a combination of old ingredients are entitled to equivalents, by which is meant that the patent in respect to each of the respective ingredients comprising the invention covers every other ingredient which, in the same arrangement of the parts, will perform the same function, if it was well known as a proper substitute for the one described in the specification at the date of the patent. Hence it follows that a party who merely substitutes another old ingredient for one of the ingredients of the patented combination is an infringer if the substitute performs the same function as the ingredient for which it is so substituted, and it appears that it was well known at the date of the patent that it was adaptable to that use. Gill v. Wells, 22 Wall. 1, 28, 22 L.Ed. 699."

■ Very pertinent here with respect to the application of the doctrine of equivalents on the issue of infringement is the statement of the rule contained in Union Paper Bag Machine Co. v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935, as follows:

"Except where form is of the essence of the invention, it has but little weight in the decision of such an issue, the correct rule being that, in determining the question of infringement, the court or jury, as the case may be, are not to judge about similarities or differences by the names of things, but are to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another, if it performs substantially the same function in substantially the same way to obtain the same result, always bearing in mind that devices in a patented machine are different in the sense of the patent law when

they perform different functions or in a different way, or produce a substantially different result.

"Nor is it safe to give much heed to the fact that the corresponding device in two machines organized to accomplish the same result is different in shape or form the one from the other, as it is necessary in every such investigation to look at the mode of operation or the way the device works, and at the result, as well as at the means by which the result is attained.

"Inquiries of this kind are often attended with difficulty; but if special attention is given to such portions of a given device as really does the work, so as not to give undue importance to other parts of the same which are only used as a convenient mode of constructing the entire device, the difficulty attending the investigation will be greatly diminished, if not entirely overcome. Cahoon v. Ring, 4 Fed.Cas. page 1011, No. 2,292, 1 Cliff. 620.

"Authorities concur that the substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape. Curtis, Patents 4th ed. sect. 310."

See also Winans v. Denmead, 15 How. 330, 342, 14 L.Ed. 717, where the court said:

"Patentable improvements in machinery are almost always made by changing some one or more forms of one or more parts, and thereby introducing some mechanical principle or mode of action not previously existing in the machine, and so securing a new or improved result. And, in the numerous cases in which it has been held, that to copy the patentee's mode of operation was an infringement, the infringer had got forms and proportions not described, and not in terms claimed. If it were not so, no question of infringement could arise. If the machine complained of were a copy, in form, of the machine described in the specification, of course it would be at once seen to be an infringe-ment. It could be nothing else. It is only ingenious diversities of form and proportion, presenting the appearance of something unlike the thing patented, which give rise to questions; and the property of inventors would be valueless, if it were enough for the defendant to say, your improvement consisted in a change of form; you describe and claim but one form; I have not taken that, and so have not infringed.

"The answer is, my improvement did not consist in a change of form, but in the new employment of principles or powers, in a new mode of operation, embodied in a form by means of which a new or better result is produced; it was this which constituted my invention; this you have copied, changing only the form; and that answer is justly applicable to this patent."

In the case of Crown Cork & Seal Co. v. Aluminum Stopper Co., 4 Cir., 108 F. 845, 866, this court, speaking through Judge Brawley, said: "Infringement is not avoided by mere change of form, or renewals of parts, or reductions of dimensions, or the substitution of mechanical equivalents, or the studious avoidance of the literal definition of specifications and claims, or the superadding of some improvement. The court will look through the disguises, however ingenious, to see whether the inventive idea of the original patentee has been appropriated, and whether the defendants' device contains the material features of the patent in suit, and will declare infringement even when those features have been supplemented and modified to such an extent that the defendant may be entitled to a patent for the improvement." See also Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 41–42, 50 S.Ct. 9, 74 L.Ed. 147; Frick Co. v. Lindsay, 4 Cir., 27 F.2d 59, 62; Hartford Empire Co. v. Swindell Bros., 4 Cir., 96 F.2d 227, 231.

Consideration of the prior art is important not only on the question of validity but also on the question of infringement, for the range of equivalents, which goes to the scope to be accorded the claims, depends in large measure upon what is

disclosed by the prior art. As said by the Supreme Court in Miller v. Eagle Mfg. Co., 151 U.S. 186, 207, 14 S.Ct. 310, 319, 38 L. Ed. 121: "The range of equivalents depends upon the extent and nature of the invention. If the invention is broad or primary in its character, the range of equivalents will be correspondingly broad, under the liberal construction which the courts give to such inventions. The doctrine is well stated in Morley Machine Co. v. Lancaster, 129 U.S. 263, [273], 9 S.Ct. 299 [32 L.Ed. 715], where it is said: 'Where an invention is one of a primary character, and the mechanical functions performed by the machine are, as a whole, entirely new, all subsequent machines which employ substantially the same means to accomplish the same result are infringements, although the subsequent machine may contain improvements in the separate mechanisms which go to make up the machine.'"

■ See also Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 414–415, 28 S.Ct. 748, 52 L.Ed. 1122; Hartford Empire Co. v. Swindell Bros., supra. And a patent which constitutes a valuable contribution to the art is entitled to liberal treatment. Hoeltke v. C. M. Kemp Mfg. Co., 4 Cir., 80 F.2d 912, 921. In that case, this court said: "The learned District Judge was of opinion that complainant was not entitled to invoke the doctrine of equivalents and must be confined to the exact device disclosed by his patent. In this we think there was error. Whether complainant's patent be treated as a pioneer or basic patent or not, he unquestionably made a valuable contribution to the art; and it it well settled that in such case his patent is entitled to liberal treatment. As said by Chief Justice Taft in Eibel Process Co. v. Minnesota, etc., Co., 261 U.S. 45, 63, 43 S.Ct. 322, 328, 67 L.Ed. 523: 'In the case before us, for the reasons we have already reviewed, we think that Eibel made a very useful discovery, which has substantially advanced the art. His was not a pioneer patent, creating a new art; but a patent which is only an improvement on an old machine may be very meritorious, and entitled to liberal treatment. Indeed, when one notes the crude working of machines of famous pioneer inventions and discoveries, and compares them with the modern machines and processes exemplifying the principle of the pioneer discovery, one hesitates in the division of credit between the original inventor and the improvers, and certainly finds no reason to withhold from the really meritorious improver, the application of the rule "ut res magis valeat quam pereat," which has been sustained in so many cases in this court.'"

■■ We shall remand the case, therefore, in order that the trial judge may consider the question of infringement in the light of the prior art and of the principles here laid down. While the prior art is being considered, the validity vel non of the patent as well as the question of infringement should be determined. Logically there can be no such thing as infringement in the absence of a valid patent; and ordinarily it is only in those cases where, assuming validity, absence of infringement is perfectly clear that it is desirable to pass upon the question of infringement without passing also upon the question of validity. See Sinclair & Carroll Co. v. Interchemical Corporation, 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644; Pennington Engineering Co. v. Spicer, 6 Cir., 165 F.2d 59, 61; Harries v. Air King Products Co., 2 Cir., 183 F.2d 158, 162.

■ Coming to the other question in the case, the taxation as recoverable costs by defendants of disbursements made for models, we think this was error. No provision is made by statute for the taxation of any such items as costs. See 28 U.S.C.A. § 1920. And ordinarily the costs taxed should be limited to the ordinary cost of action. Parks v. Booth, 102 U.S. 96, 107, 26 L.Ed. 54; Sutton v. Gulf Smokeless Coal Co., 4 Cir., 77 F.2d 439. A special statute now permits the court, in its discretion, to tax reasonable attorneys fees in a patent case. 35 U.S.C.A. § 70. There is no statutory provision, however, authorizing the taxing of costs of models; and disbursements on this account can only be taxed under the general rule in equity, which is

that costs beyond those allowed by statute will be taxed only in exceptional circumstances, "such as exist in the case of fraud, oppression, or bad faith, cases of fiduciary relationship or those in which the prevailing party has helped to create the fund upon which the costs are charged." Swan Carburetor Co. v. Chrysler Corporation, 6 Cir., 149 F.2d 476, 478; Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184. The fact that the court is enlightened by certain evidence is not such an exceptional circumstance as to justify the taxation in the costs of the expense of procuring that evidence. Swan Carburetor Co. v. Chrysler Corporation, supra; Copeman Laboratories Corp. v. Norge Division of Borg-Warner Corp., D.C., 89 F.Supp. 161. As said by Judge Wallace in Cornelly v. Markwald, C.C., 24 F. 187, "Irrespective of any question as to the propriety or necessity of procuring such a model, the expense incurred cannot be deemed a taxable disbursement in favor of the prevailing party. The reasons why such an item should not be allowed, are fully stated in the opinion of the court in Woodruff v. Barney [30 Fed.Cas. p. 518, No. 17,986], 1 Bond 528, and in Hussey v. Bradley [12 Fed.Cas. p. 1059, No. 6,946a], 5 Blatchf. 210. It is obvious that it would subject litigants in patent cases to onerous and sometimes to oppressive burdens, if parties were permitted, at their discretion, to procure models and tax their unsuccessful adversaries with the expense."

We have considered the decision of the 7th Circuit in W. F. & John Barnes Company v. International Harvester Co., 7 Cir., 145 F.2d 165; but we interpret the holding of that case as going no further than that a court of equity has power to allow such disbursements in a proper case. Assuming that such power exists, we think it clear that it should not be exercised to permit the taxing of such disbursements as costs in the absence of previous authorization by order of court. Reinharts, Inc. v. Caterpillar Tractor Co., 9 Cir., 99 F.2d 648; Victor Talking Machine Co. v. Starr Piano Co., 2 Cir., 281 F. 60, 66. As said by Judge Leahy in Gotz v. Universal Products Co., D.C., 3 F.R.D. 153, 156: "I do not think a party acting on his own initiative should impose a burden of costs upon the unsuccessful party by preparing expensive illustrations and exhibits without first consulting with the court. These are matters which should properly be determined in pretrial conference under Rule 16 of the Rules of Civil Procedure [28 U.S.C.A.]."

It is said that because models are necessary to a proper understanding of the case by the court, the cost of preparing them should be allowed in the court's discretion; but models are no more necessary than is the testimony of expert witnesses or the assistance of counsel. Fees of counsel were certainly not taxable in the costs until this was allowed by statute; and the Supreme Court has expressly ruled in a law case that fees of expert witnesses are not taxable. Henkel v. Chicago etc. R. Co., 284 U.S. 444, 52 S.Ct. 223, 76 L.Ed. 386. And the Second Circuit has made the same ruling in a patent case. Cheatham Electric Switching Device Co. v. Transit Development Co., 2 Cir., 261 F. 792. The decision of the court in the Henkel case was based upon the fact that Congress had dealt comprehensively with the subject of fees of witnesses and had made no exception with respect to the fees of expert witnesses. On the same principle Congress having dealt with the subject of costs in patent cases and having authorized the taxation of reasonable attorneys fees without making any provision with respect to cost of models or fees of expert witnesses must presumably have intended that they be not taxed in the absence of such exceptional circumstances as would warrant taxation of disbursements by a party in other equity cases.

For the reasons stated, the decree and order appealed from will be reversed and the case will be remanded for further proceedings not inconsistent herewith.

Reversed and remanded.