**The CROSS COMPANY, a Michigan corporation, Plaintiff,**

v.

**BUHR MACHINE TOOL CORPORA-TION, a Delaware corporation, Defendant.**

**Civ. A. No. 31134.**

United States District Court,
E. D. Michigan, S. D.

Nov. 24, 1971.

Don K. Harness, Edward R. Casselman, Harness, Dickey & Pierce, Detroit, Mich., for plaintiff.

Charles R. McKinley, Franklin E. Quale, Whittemore, Hulbert & Belknap, Detroit, Mich., for defendant.

## OPINION

FEIKENS, District Judge.

The Cross Company, plaintiff, of Fraser, Michigan (hereinafter referred to as Cross) brings this patent-infringement action against Buhr Machine Tool Corporation, of Ann Arbor, Michigan (hereinafter referred to as Buhr). The action is brought pursuant to the patent laws of the United States, and the court has jurisdiction. Cross is the owner

of United States Letters Patent No. 2,672,675, and it asserts that Buhr has infringed Claim 13 of that patent. Buhr denies this and says that, in any event, Cross's patent is invalid.

Cross and Buhr both engage in the manufacture and sale of machine tools, including pallet transfer machines.

Such machines are widely used for automatic, or semi-automatic, high-production manufacturing operations. A typical transfer machine has multiple stations. It is never manufactured and sold independently, but always as a part of the machine tool. The major automobile companies are typical customers. A production part, an engine casting, for example, is placed in a fixture on the pallet and then is moved by transfer means through work stations in the machine where various machining operations such as milling, drilling, boring, chamfering, and reaming operations are performed on the part. These operations are performed automatically and require extreme accuracy in each of the work stations to hold the work solidly in the located part. This is the function of a pallet transfer machine.

This suit involves a locating and clamping mechanism on a pallet transfer machine. The locating and clamping mechanism, defined by Claim 13, contains essentially a combination of locating pins and spring-biased, self-operating clamps, interconnected to and through a single mechanical actuator, herein called a shaft.

Claim 13, which is alleged to be infringed, is as follows:

"13. Locating and clamping mechanism comprising a base having laterally spaced ways for supporting an object traversing said base; locating mechanism for positioning such object on the base; clamping mechanism on the base having parts engageable with such object to hold the same securely in a located position on the base; pivoted actuator means for said clamping mechanism; spring-biased plungers engaging said pivoted actuator means to hold said clamping mechanism in clamping position on the base, rack and pinion means interconnecting the shaft and said locating mechanism for transmitting motion from the shaft to said locating mechanism during initial rotating movement of the shaft in one direction; and cam means on and fixed to the shaft engageable with the pivoted actuator means of said clamping mechanism during said initial rotative movement of the shaft and operable by such engagement to hold said clamping mechanism released, said cam means being movable to disengage said pivoted actuators by subsequent rotative movement of the shaft in said one direction whereby to permit said plungers to move said clamping mechanism to clamping position."

Buhr defends, saying:

1. Claim 13 of the patent in suit covers a combination of old elements disclosed in the prior art, that the patent in suit is a narrow patent in a crowded art, and that it is invalid because the differences between the subject matter of the claim and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the patent pertains. If this contention is accepted, the matter ends there.

2. If the Cross patent is valid, Buhr says its accused machines do not employ the pivoted actuator means which is an essential element of the claimed combination, and Claim 13 therefore does not read on the accused machines.

3. That Buhr has not substituted any other element for the pivoted actuator means and the doctrine of equivalents therefore cannot be employed to find infringement of the claim.

### Factual Background

Prior to the issuance of the Cross patent, devices customarily used in pallet transfer machines to actuate locating or clamping mechanisms for positioning and holding work pieces in stationary

positions while machining operations were being performed involved the use of hydraulic cylinders at individual stations, associated complex piping, extensive electrical wiring, and related devices such as directional control solenoid valves. Limit switches were required to monitor the operation of the locating and clamping mechanisms and to interlock the valve solenoids and the limit switches in the control circuits. Their purpose was to prevent the machine from operating unless all parts were properly located and properly clamped. Failures in hydraulic and electronic circuitry were not uncommon, and this resulted in higher maintenance costs and lower productivity.

Cross claims that the elements and features that make up its pallet clamp unit and which comprise the invention are uniquely combined and corrolated in such a way that multiple units can be associated and interconnected for mutual operation, in multi-station transfer machines, that the need for many actuating hydraulic cylinders, directional control valves, accumulating tanks, and other devices conventionally used with hydraulic circuitry is eliminated.

Prior to the issuance of the Cross patent, Buhr had made and sold a pallet transfer machine equipped with a locating and clamping mechanism. (See Plf. Exh. 11). Cross, accordingly, under date of October 15, 1954, placed Buhr on notice of the Cross patent. Buhr ceased making that machine. In 1956, Buhr filed an application for a patent covering a hydraulically actuated clamp. This resulted in Patent No. 2,955,347 (Plf. Exh. 23), which issued October 11, 1960. Cross and Buhr stipulate it does not infringe the Cross patent.

Sometime thereafter, Buhr began to manufacture and sell two versions of its accused units, hereinafter known as a single-shaft unit (Plf.Exh. 16) and a double-shaft unit (Plf.Exh. 19), and Cross thereupon, on September 5, 1967, again notified Buhr of its patent and charged Buhr with infringement. Nonetheless, pallet transfer machines equipped with either single-shaft pallet clamp units or double-shaft pallet clamp units, were manufactured by Buhr in Ann Arbor, Michigan, and sold within the jurisdiction of this court.

### The Cross Locating and Clamping Mechanism

The Cross patent is a locating and clamping mechanism for accurately locating and clamping an object such as a work piece, on a pallet having a work fixture thereon, for a machining operation. The patent discloses a pallet movable along guide ways and a locating mechanism connected to a rotatable operating shaft through a rack and pinion connection which includes a pair of vertically movable locating pins engageable in holes in the underside of the pallet which supports a work fixture for the work to be machined. The clamping mechanisms comprise pivoted levers having a clamping jaw at one end to clamp the same against the ways. The other ends of the clamp levers are engaged by vertically slidable pins which in turn engage a cam surface on pivoted actuator levers. The pivoted actuator levers, which are referred to as pivoted actuator means in the claim, have arm portions engaged on one side by spring-biased plungers which urge the pivoted actuator means to a position by which the cam surfaces thereon elevate the vertically slidable pins to pivot the clamp levers to their clamping position. The rotatable operating shaft also has a cam which is engageable with the opposite sides of the arm portions of the pivoted actuator levers to pivot the latter against the force of the spring-biased plungers to a position in which the vertically slidable pins permit the clamp levers to pivot to release the clamps.

### The Function of the Cross Device

During initial rotation of the rotatable shaft in one direction, the locating pins are moved upwardly into openings in the pallet to locate the pallet; and during this initial rotation the cam on

the shaft remains in engagement with the pivoted actuator levers to hold the same against the force of the spring-biased plungers so that the clamp levers will remain in their released positions. Upon continued rotation of the shaft in the same direction, the cam disengages the pivoted actuator means to allow the spring-biased plungers to rotate the pivoted actuator means so that the cam surfaces thereon raise the vertically slidable pins to effect pivoting of the clamp levers to the clamped position. When the machining operation is completed, the shaft is rotated in the opposite direction, and the cam thereon rotates the pivoted actuator means against the force of the spring-biased plungers, permitting the clamp levers to pivot to a released position. Further rotation then withdraws the locating pins from the pallet.

## The Buhr Locating and Clamping Mechanism

Buhr's accused machines do not have the pivoted actuator and the vertically slidable pins which are interposed between the clamp levers and the operating shaft in the Cross machine. In the Buhr machines, the clamps are pivoted intermediate their ends and have at one end clamping jaws engageable with a portion of the pallet to clamp the same against the ways. The clamp levers extend downwardly and are directly engaged on one side by spring-biased plungers which urge the clamp levers toward the rotatable shaft and into clamping position. The shaft has a cam thereon which directly engages the lower ends of the clamp levers and in one position of the shaft pivots the clamp levers to released position against the force of the spring-biased plungers.

## The Function of the Buhr Device

When the shaft is rotated, the cam thereon disengages the clamp levers so that the spring-biased plungers urge the clamp levers toward the rotatable shaft and pivot the clamp levers to clamping position. During initial rotation of the shaft in one direction, the locating pins are raised into openings in the pallet through a rack and pinion connection with the shaft, and during this initial rotation the cam on the shaft remains in engagement with the clamp levers to hold them in their released position. Further rotation of the shaft in the same direction then causes the cam to disengage the clamp levers, whereupon the spring-biased plungers pivot the clamp levers to their clamping position. When the machining operation is completed, rotation of the shaft in the opposite direction pivots the clamp levers to released position. Further rotation then withdraws the locating pins from the pallet.

## Validity

When the validity of a patent is attacked, there is a strong presumption of validity because the patent has issued from the United States Patent Office. 35 U.S.C. § 282. Buhr attempts to overcome this presumption when it says that the prior art makes the Cross claim obvious and therefore there is a lack of patentable invention over the prior art. Buhr raises its defense under Section 103 of Title 35, United States Code. Commenting on this section in Graham v. John Deere Company, 383 U.S. 1 at p. 17, 86 S.Ct. 684, at p. 694, 15 L.Ed.2d 545 (1966), the United States Supreme Court says:

"While the ultimate question of patent validity is one of law, Great A. & P. Tea Co. v. Supermarket Equipment Corp., [340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950)] at 155 [71 S.Ct. at 131], the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent are resolved. Against this background, the obviousness or nonob-

viousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy."

We turn accordingly to the scope and content of the prior art. In support of its defense of invalidity, Buhr relies on these prior art patents and prior use:

| Name | Number | Date of Issue | Def. Exh. No. |
|---|---|---|---|
| DeVlieg | 1,737,002 | Nov. 26, 1929 | 13 |
| Pope | 1,936,263 | Nov. 21, 1933 | 18 |
| Kling | 2,049,842 | Aug. 4, 1936 | 17 |
| Buell | 2,050,828 | Aug. 11, 1936 | 19 |
| Clark | 2,120,966 | June 21, 1938 | 12 |
| Oberhoffken et al. | 2,193,840 | Mar. 19, 1940 | 16 |
| Muhl et al. | 2,302,878 | Nov. 24, 1942 | 14, 14A, 14B |
| Mansfield | 2,392,169 | Jan. 1, 1946 | 15, 15A, 15B, 15C |
| Rolker | 2,404,460 | July 23, 1946 | 20, 20A |
| Grandoulier (French patent) | 726,506 | Nov. 15, 1930 | 21, 21A |

A machine manufactured and sold in 1939 by National Automatic Tool Company and identified as the Natco machine      11

Of the foregoing, Muhl, et al., 2,302,878; Mansfield, 2,392,169; Kling, 2,049,842; and Oberhoffken, et al., 2,193,840, were cited by the Patent Office as file references during the prosecution of the application of the Cross patent.

---

Buhr claims that the prior art discloses machines which include locating and clamping mechanisms operated by a single operating member which first actuates the locating mechanism and then the clamping mechanism. Buhr says that this concept is shown in the Mansfield and Muhl file references, the Clark and DeVlieg patents, and the prior use Natco machine.

The Mansfield patent (Def.Exh. 15, 15A, 15B, 15C) discloses a pallet transfer machine in which the pallets are first located and then clamped by a power cylinder. The Patent Office file on the Cross patent (Def.Exh. 1) indicates that it was pointed out to the examiner that Mansfield requires a hydraulic power cylinder and a separate locating and clamping mechanism. This appears to be so. A separate locating and clamping unit and a separate power cylinder is required at each station.

The Muhl patent (Def.Exh. 14, 14A, 14B) shows a transfer machine in which work locating pins and work clamps at each station are positively actuated mechanically simultaneously by cams on a single shaft which is operated by an electric motor through a worm and worm gear. The file reference (Def. Exh. 1) shows that it was pointed out to the examiner that Muhl cannot operate a series of locators and clamps through a single operating means. It appears that in Muhl there is no adaptability for multi-station operation by a single shaft because the work clamps are not self-operating but are positively actuated mechanically.

The Clark patent (Def.Exh. 12) shows a pallet transfer machine which provides locators and clamping of the pallets at a plurality of stations. But Clark uses springs in its locating pins; there is no positive actuation mechanically as in Cross. Clark also uses springs to insert the locking wedges (the clamping) but it has no dependable way of withdrawal of the wedges to release the clamping action.

The DeVlieg patent, (Def.Exh. 13) discloses a machine having a rotatable index table provided with a single, vertically movable, locating pin and an axially extending, vertically movable, clamp

—both of which are operated positively by a common actuator shaft through rack and pinion connections. A difference between DeVlieg and Cross is that the clamping mechanism is positive rather than spring-actuated.

The Natco prior-use machine (Def. Exh. 11) is a transfer machine designed to move work pieces through a group of work stations; it has a means which both locate and clamp the work through a common actuator. Interestingly, in Natco we find the exact reverse of Cross. While in Cross there is a positive mechanical engagement of the locator pins, this is not so in Natco. In Natco a spring constantly urges the locating pin into position. While in Cross there are spring-actuated clamps, Natco uses a positive mechanical engagement to clamp. A Natco machine, therefore, must be equipped with limit switches to monitor proper location of the locator pins in the work piece and on multiple stations, of course, there must be an interlocking of the switches.

Buhr also claims that in the prior art there is a disclosure that locating pins are operated through a rack and pinion connection with a rotatable operating shaft. Buhr cites the Oberhoffken and DeVlieg patents. The Oberhoffken patent discloses a transfer machine for engine blocks; the locating pins in the work station are all actuated simultaneously by a common rotatable shaft through rack and pinion connections. This was pointed out to the patent examiner. (See Def.Exh. 1). The difference, though, between Oberhoffken and Cross is that in Oberhoffken the work pieces are clamped by separate hydraulic cylinders. Thus, the clamping mechanism is shown to be a totally separate operation from the locating pin mechanism. There is no interconnecting device such as a shaft.

The DeVlieg patent has already been commented on. It reveals only a single actuator. Again, it is observed that this patent is for a rotatable work table and the single actuation positively engages both the locating pin and the clamp and this is a difference.

Additionally, Buhr says that the prior art shows that clamps are moved to clamping positions by springs. Buhr refers to the Kling file reference and to the Clark, Buell, and Rolker patents. The Kling patent is for a rolling mill and shows a clamping device which is set by spring pressure. See Def.Exh. 17. The clamps are released by a hydraulic system, and there is no connection or interdependence with a system of locator pins.

The Clark patent has already been discussed. It does show that wedges to provide clamping are driven into position by springs, but as earlier stated, there appears to be no dependable way of withdrawal.

The Buell patent covers a chuck. While a spring mechanism is employed, there is no use of locator pins and, therefore, no combination as shown in Cross. Furthermore, there is no common actuator, as in Cross.

The Rolker patent, Def.Exh. 20, discloses pivoted spring actuated work-gripping arms mounted on a work-handling conveyor. While it is true that the clamping arms are spring operated in order to hold the work piece, the clamp is forced open through a wedging action. Rolker is limited to that; it does not show locating pins, a common actuator, or a combination. Buhr also makes reference to the Natco prior-use machine. It must be conceded that in Natco if a spring is equivalent to a weight, then the patent teaches clamping through a spring-like device.

Finally, Buhr claims that cam means operable to hold a clamp in a released position against the force of a spring are shown in the Buell and Rolker patents, and it says that in the Natco prior-use machine, a cam on the rotatable shaft holds the clamp in a released position against the force of the weight. The differences between this prior art and the Cross patent have already been stated.

There remains the French patent (Def.Exh. 21) which shows a pair of pivoted clamping jaws which are closed positively by a cam actuator and released by spring action, but in this patent there is no disclosure of locator pins. The concept in this patent could not be used plurally. Buhr also makes reference to the Pope patent (Def.Exh. 18). It relates to a multiple-spindle, continuous milling machine, and shows two clamps which are positively set by a wedge-shaped cam and opened by spring action when the cam is released. Pope does not show the combination of positively actuated locators and self-operated clamps with a common rotatable actuator.

■ Accordingly, it is found that the differences between the Cross device and the prior art are substantial and are such that the subject matter would not have been obvious to a person having ordinary skill in the art. It is interesting that the patent office found differences between the Cross patent and four of the prior art patents,* and none of these prior art patents was found to read on Claim 13. The Section 103 condition (Title 35 U.S.C.) requires that the differences between the Cross concepts in Claim 13 and the prior art would have been obvious at the time the invention was made to a person having ordinary skill in the art to which Claim 13 pertains. I find that Claim 13 possesses novelty and utility and that none of the prior art patents or the prior-use machine, discloses the essential combination required by Claim 13 of positive locators and self-operating clamps mechanically connected to and through a common actuator, and none of these patents or the prior-art machine discloses the mode of operation and the beneficial results achieved by the novel combination of the elements in the Cross claim. Thus, I find that the Cross patent as set forth in Claim 13 constitutes an inventive concept, that the concept has enjoyed commercial success and that it solves a long-felt need. The Buhr defense of obviousness cannot be accepted.

### Infringement

Buhr says that it does not infringe the Cross patent since its accused devices do not employ a pivoted actuator means. In the precise language of Claim 13, the accused devices, Buhr says, do not have "a pivoted actuator means for said clamping mechanisms." In the Buhr machines, clamps are pivoted intermediate their ends and have at one end a clamping jaw engageable with a portion of the pallet to clamp the same against the way. At the other ends of the clamp levers those ends are directly engaged by cams on the rotatable operating shaft. In one position, the shaft pivots the clamp levers to a released position against the force of spring-biased plungers. When the shaft is rotated, the cam thereon disengages the clamp levers so that the spring-biased plungers pivot the clamp levers against the rotatable shaft and into clamping position. When the machining operation is completed, rotation of the shaft in the opposite direction pivots the clamp levers to released position and then withdraws the locating pins from the pallet.

In the Cross machine, the pivoted actuator levers which are referred to as pivoted actuator means in Claim 13 have arm portions engaged on one side by spring-biased plungers which urge the pivoted actuator means to a position by which the cam surfaces thereon elevate the vertically slidable pins to pivot the clamp levers to their clamping position. When the machining operation is completed, the shaft is rotated in the opposite direction, and the cam thereon rotates the pivoted actuator means against the force of the spring-biased plungers thereby allowing the clamp levers to pivot to released position and then withdraws the locating pins from the pallet.

In the Cross device, the thrust which causes the clamp jaw to bite downward on the way is transmitted from the

---

* Kling, 2,049,842; Oberhoffken, 2,193,840; Muhl, et al. 2,302,878; and Mansfield, 2,392,169.

spring-biased plungers to the arm portion and then along the vertically slidable pin (of the pivoted actuator lever) to the inside end of the clamp. In the Buhr device, the thrust which causes the clamp jaw to bite downward on the way is transmitted from the spring-biased plunger to the actuating tail of the clamp.

In both devices the action of clamping when completed is irreversible. Irreversibility occurs in the Cross device because when the spring-biased plungers are in the extended position the arm portion of the pivoted actuator lever becomes vertical. The cam surface on the arm portion then being vertical moves the vertically slidable pin upward raising the inside end of the clamp arm. It is the realignment of this plane which causes irreversibility. The clamp biting down on the way exerts a counter-pressure against the plane and not against the spring-biased plunger. The clamp is irreversibly locked in position and will remain so until the plane in which the pivoted actuator lever is placed changes.

Irreversibility occurs in the Buhr device when the spring-biased plungers are extended. At that point, the biting edge of the clampdown through the center of the pivot on the clamp is slightly off the vertical plane. This is when irreversibility occurs. The biting edge of the clamp exerts a counter-pressure against the plane and not against the spring-biased plunger. The clamp is irreversibly locked in position and will remain so until the plane in which the single clamping mechanism is placed changes in relation to its pivot.

This irreversibility is broken and the clamps released when the force in the plane is offset by the rotation of the wedging mechanism on the shaft. This wedging action employed on the shafts of both the Cross and Buhr devices breaks the irreversibility by forcing the spring-biased plungers outward horizontally and thus causing a change in the planes releasing the clamps.

It only remains to be said that it is unimportant under the doctrine of equivalents that in the Cross device the counter-force (irreversibility) is on the cam end of the pivoted actuator while in the Buhr device it is on the pivot of the clamping mechanism.

■ While it would appear that Buhr does not have a pivoted actuator means within the precise language of Claim 13, as does Cross, in that the Buhr device has a single clamping mechanism and the Cross device has a pivoted actuator lever consisting of an arm portion and a vertical slidable pin which moves the clamp, the Buhr device, both in fact and in law, is the equivalent of the Cross device. Buhr does not escape infringement of Claim 13 simply by saying it does not employ pivoted actuator means.

The doctrine of equivalents and the facts in this case amply show that the two devices do the same work in substantially the same way and accomplish substantially the same result. Under Graver Manufacturing Co. v. Linde Company, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097, this appears with regard to the doctrine of equivalents:

"Originating almost a century ago in the case of Winans v. Denmead, 15 How. 330, 14 L.Ed. 717, it has been consistently applied by this Court and the lower federal courts, and continues today ready and available for utilization when the proper circumstances for its application arise. . . . The theory on which it is founded is that 'if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape.'"

Or again at pages 609, 610, 70 S.Ct. at pages 857:

"Equivalence, in the patent law, is not the prisoner of a formula and is not an absolute to be considered in a vacuum. It does not require complete identity for every purpose and in every respect. . . . Consideration must be given to the purpose for which an ingredient is used in a pat-

**1368**

ent, the qualities it has when combined with the other ingredients, and the function which it is intended to perform. An important factor is whether persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was.

". . . Like any other issue of fact, final determination requires a balancing of credibility, persuasiveness and weight of evidence."

See, also Marston v. J. C. Penney Co., 353 F.2d 976 (4th Cir. 1965); Duo-Flex Corporation v. Building Service Co. et al., 322 F.2d 94 (5th Cir. 1953); Specialty Equipment & Machinery Corp. v. Zell Motor Car Co., 193 F.2d 515, 519 (4th Cir. 1953); Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 298 F.Supp. 435 (D.C.1969).

In both Cross and Buhr devices, there is an identity of function. The function of the pivoted actuator levers in Cross and the clamping mechanism in Buhr is to clamp a work pallet on ways. This function is performed in substantially the same way in each device. Each device uses independently operated clamps activated by springs, which are permitted to function by the relationship of the springs to cams on a shaft. Each device employs the use of force from the springs to a mechanism that pivots, and each accomplishes its purpose when that pivoting mechanism is placed in a changed plane to cause irreversible clamping. Each utilizes a continuing rotating shaft which, through cams on the shaft, depresses the springs so that the off-vertical plane position of the pivoted mechanisms is broken and clamping release accomplished.

In both the Cross and Buhr devices there is also an identity of result. In each device the clamping of the pallet onto the way is performed for the same purpose—the holding of work either to be machined, drilled, or milled.

Thus, the court finds that the clamping mechanism used by Buhr is the equivalent of the pivoted actuator means used by Cross.

It is clear that Buhr had actual knowledge of the Cross invention and of the patent in suit substantially from the date of issuance and contrived its own design, which is an equivalent of Cross's patent.

Thus, the court concludes that Buhr has failed to meet its burden of proving Claim 13 of the Cross patent No. 2,-672,675 invalid; that the invention covered by Claim 13 of that patent is patentable; that the patent is valid; that Cross is the owner thereof; and that Buhr's accused devices infringed the Cross device.

Accordingly, Cross is entitled to damages, if any, suffered by virtue of Buhr's making, using, and selling the accused devices, and for an accounting thereof and for costs. An appropriate order may be entered.

This opinion constitutes the findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.